# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

899

KA 10-00387

PRESENT: SMITH, J.P., PERADOTTO, CARNI, LINDLEY, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

JOSE L. CASADO, DEFENDANT-APPELLANT.

---

EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (STEPHEN X. O'BRIEN OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (Daniel J. Doyle, J.), rendered August 3, 2009. The judgment convicted defendant, upon a jury verdict, of attempted aggravated murder of a police officer, attempted aggravated assault upon a police officer and criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, attempted aggravated murder of a police officer (Penal Law §§ 110.00, 125.26 [1] [a] [i]; [b]) and attempted aggravated assault upon a police officer (§§ 110.00, 120.11). Defendant contends that his conviction of those two counts should be reversed and those counts should be dismissed as duplicitous because the evidence at trial establishes that there were two separate and distinct shooting incidents. We reject that contention. We note at the outset that defendant is correct that the two shooting incidents constitute distinct criminal acts as opposed to a single, continuing transaction (*see People v Boykins*, 85 AD3d 1554, 1555, *lv denied* 17 NY3d 814; *cf. People v Alonzo*, 16 NY3d 267, 270-271; *People v Kaid*, 43 AD3d 1077, 1079-1080). The first criminal act occurred when defendant fired a shot in the direction of an unmarked police car from the driveway of a residence, and the second criminal act occurred when defendant fired two shots at Officer Ryan Hickey while being pursued by him into the backyard of the residence. Nevertheless, the indictment was not rendered duplicitous on that ground because only the latter act is sufficient to constitute the crimes of attempted aggravated murder of a police officer and attempted aggravated assault upon a police officer as charged in counts one and two of the indictment (*cf. Boykins*, 85 AD3d at 1555).

Count one of the indictment, as amplified by the bill of particulars, alleges in relevant part that, "[o]n or about July 8, 2008, [at] approximately 11:15 PM, at or near 78 Evergreen Street, in the City of Rochester, . . . [defendant], *with intent to cause the death of another person, Officer Ryan Hickey, . . . attempted to cause the death of Officer Hickey by firing shots from a loaded handgun toward him*" (emphasis added). Count two of the indictment, as amplified by the bill of particulars, alleged in relevant part that, "[o]n or about July 8, 2008, [at] approximately 11:15 PM, at or near 78 Evergreen Street, in the City of Rochester, . . . [defendant], *with intent to cause serious physical injury to a person he knew or reasonably should have known to be a police officer engaged in the course of performing his official duties, Officer Ryan Hickey, . . . attempted to cause such injury by means of a deadly weapon*, to wit, a loaded handgun" (emphasis added). Thus, counts one and two required the People to prove that defendant intended to cause death and serious physical injury to Officer Hickey, respectively (*see* Penal Law §§ 120.11, 125.26 [1] [a] [i]). The evidence that defendant fired the first shot in the direction of the unmarked police vehicle, however, does not support the conclusion that defendant intended to kill or seriously injure any particular police officer (*see generally People v Ramos*, 19 NY3d 133, 135). Rather, each of the four officers in that vehicle testified that defendant fired a single shot at the vehicle or in the direction of the officers generally before fleeing. Indeed, the officer who had been driving the vehicle testified that, after he opened the door and put one foot out, "*we* were shot at" (emphasis added). Another officer testified that, while exiting the vehicle, he "observed the defendant raise a revolver and fire one shot at *us*" (emphasis added). Officer Hickey similarly testified that he saw defendant fire "one shot at *us*" (emphasis added). When asked where defendant was aiming, Officer Hickey replied "I can tell you the muzzle flash was pointing in *our direction*. I don't know exactly where he was aiming the gun" (emphasis added).

By contrast, the trial testimony was clear that, after defendant fled up the driveway and Officer Hickey began to pursue him, defendant fired two shots at Officer Hickey. Officer Hickey testified unequivocally that the two shots were directed at him: "He fired two shots *at me*. I could clearly see the muzzle flashes coming in my direction" (emphasis added). He explained: "I was chasing [defendant], and I could see the form of his body turn towards me, at which point he fired at me with the two shots." Officer Hickey's testimony to that effect was corroborated by other witnesses.

In light of the foregoing, we conclude that, while the evidence regarding the first shot fired by defendant may establish a mental state of depraved indifference, recklessness or an intent to kill a police officer, it does not establish that defendant specifically intended to kill or seriously injure Officer Hickey (*see People v Fernandez*, 88 NY2d 777, 780; *People v Cesario*, 157 AD2d 795, 796, *lv denied* 75 NY2d 917; *cf. People v Cabassa*, 79 NY2d 722, 728; *People v Hollenquest*, 309 AD2d 1159, 1159, *lv denied* 3 NY3d 707; *see generally* Penal Law § 15.05 [1], [3]). Thus, inasmuch as the evidence

establishes only a single act of attempted aggravated murder and attempted aggravated assault as against Officer Hickey, i.e., the two shots defendant fired directly at Officer Hickey, we conclude that counts one and two of the indictment were not rendered duplicitous by the trial testimony (*see generally* CPL 200.50 [3] - [7]; *People v Bowen*, 60 AD3d 1319, 1320, *lv denied* 12 NY3d 913).

Defendant further contends that Supreme Court improperly allowed a prosecution witness to testify concerning prior bad acts by defendant, i.e., that, prior to the shootings at issue, defendant possessed a gun inside the residence and was part of a group of men armed with guns who wanted to shoot at another house. With respect to the testimony concerning defendant's alleged prior gun possession, we conclude that such testimony was properly admitted as evidence of a motive for the shooting, i.e., to avoid capture in the presence of presumably illegal firearms and to complete the narrative of events by explaining why the police were summoned to the residence (*see People v Giuca*, 58 AD3d 750, 750, *lv denied* 12 NY3d 915; *People v Clarke*, 5 AD3d 807, 809-810, *lv denied* 2 NY3d 797; *see generally People v Alvino*, 71 NY2d 233, 241-242; *People v Burnell*, 89 AD3d 1118, 1120-1121, *lv denied* 18 NY3d 922). Contrary to the contention of defendant, the potential prejudice of such testimony did not outweigh its probative value (*see Burnell*, 89 AD3d at 1121). Notably, defendant admitted in his statement to the police, which was read into evidence, that he "kn[e]w there were at least three guns in the house" and that, earlier in the day, he "put a loaded black .380 inside on top of the couch." In addition, defendant testified that he fled when the police arrived because he thought that the police were executing a search warrant on the house and he knew that there were guns inside.

With respect to the witness's testimony concerning a group of armed men, we note that the witness testified that she told the police "that there were some guys out[, ] they all had guns and they wanted to shoot at [her] friend's house." Contrary to defendant's contention, that testimony does not constitute prior bad act evidence. The witness testified that there were several other men in the house, and her statement does not specifically implicate defendant. Even assuming, arguendo, that her testimony constitutes *Molineux* evidence, we conclude that the testimony was admissible to establish motive and to complete the narrative of events (*see Giuca*, 58 AD3d at 750), and that the prejudicial effect of the statement did not outweigh its probative value (*see generally Alvino*, 71 NY2d at 242). We note in particular that, prior to the challenged testimony, the jury already heard testimony from a police officer elicited by defense counsel that there was a "beef between two possible gangs," that the two groups had exchanged gunfire earlier in the day and that tensions were high on the street. The witness who testified regarding the group of armed men also testified, without objection, that there was "conflict on and off" between two neighborhood groups and that "they were shooting at each other."

In any event, we conclude that any error in the admission of the testimony concerning the prior bad acts is harmless. The evidence of defendant's guilt is overwhelming (*see People v Finger*, 266 AD2d 561,

561, *affd* 95 NY2d 894; *Burnell*, 89 AD3d at 1121; *People v Thomas*, 26 AD3d 241, 242, *lv denied* 6 NY3d 898), and there is no significant probability that the jury would have acquitted defendant if the allegedly improper *Molineux* evidence had been excluded (*see People v Orbaker*, 302 AD2d 977, 978, *lv denied* 100 NY2d 541; *People v Robinson*, 202 AD2d 1044, 1045, *lv denied* 83 NY2d 1006; *see generally People v Crimmins*, 36 NY2d 230, 241-242).

Finally, defendant's contention that the court erred in failing to give a limiting instruction at the time the challenged testimony was admitted is unpreserved for our review inasmuch as he did not request a contemporaneous instruction (*see Finger*, 266 AD2d 561, 561; *see also Burnell*, 89 AD3d at 1121; *Thomas*, 26 AD3d at 242).  We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

Entered:  October 5, 2012                        Frances E. Cafarell
                                                 Clerk of the Court